DAN S. CLARK, SR., EMPLOYEE v. GASTONIA ICE CREAM COMPANY, EM-
PLOYER, NON-INSURER, AND LUMBERMENS MUTUAL CASUALTY COM-
PANY, CARRIER.

(Filed 31 January 1964.)

**1. Master and Servant § 53—**

Whether an employee's injury is sustained by accident arising out of and
in the course of his employment is a mixed question of law and fact.

**2. Master and Servant § 93—**

Where there is no exception to the findings of the particular facts and the
particular findings provide a factual basis for the ultimate finding that the
employee's injury arose out of and in the course of his employment, excep-
tion to the ultimate finding will not be sustained.

**3. Master and Servant § 82—**

The Industrial Commission has only such jurisdiction as is conferred upon
it by statute, expressly or by necessary implication.

**4. Courts § 2—**

Want of jurisdiction may be raised at any time.

**5. Same; Master and Servant § 78—**

Where the injured employee does not assert any claim against insurer and
the employer has the insurer brought in as a party and asserts liability of
insurer under a policy which on its face was not in force until some six days
after the injury in question, the Industrial Commission has no jurisdiction
to determine the rights and liabilities of the employer and the insurer *inter
se*, since insurer's liability must be based upon reformation of the policy and
the Industrial Commission has no jurisdiction of the equitable remedy of
reformation upon the facts of the case. G.S. 97-91.

**6. Appeal and Error § 59—**

The language in an opinion of the Supreme Court must be considered in
relation to the facts of the particular case in which it was written.

APPEAL by defendant employer, Gastonia Ice Cream Company, from
*Riddle, S. J.,* July 1963 Civil Session of GASTON.

Proceeding under our Workmen's Compensation Act. G.S. 97-1 *et seq.*

Plaintiff (Clark) filed claim against his employer, Gastonia Ice Cream
Company (Ice Cream Company), alleging he sustained a compensable
injury on May 3, 1960.

On January 31, 1962, Ice Cream Company, asserting "it was not a
non-insurer at the time of the accident in question, but instead was cov-
ered by Workmens Compensation Policy No. OCL 614 (*sic*) issued by
the Lumbermens Mutual Casualty Company," moved that Lumbermens
Mutual Casualty Company (Casualty Company) be made a party to
the proceeding. No order making Casualty Company a party appears in

the record. However, unchallenged recitals in the opinion of the hearing Commissioner disclose Casualty Company had "received all pleadings and other documents in connection with this case," and that counsel for Casualty Company acted in its behalf in "the trial of this claim" and during the progress of the hearing "advised the Commission that his appearance was no longer special and accepted the jurisdiction of the Commission to make the defendant carrier a party to the action."

It was stipulated that plaintiff and Ice Cream Company were subject to the Workmen's Compensation Act; that Ice Cream Company regularly employed five or more employees; that the employer-employee relationship existed between Ice Cream Company and plaintiff at the time of the alleged accidental injury; and that plaintiff's average weekly wage at the time of the alleged accidental injury was $35.00.

Hearings were conducted by Deputy Commissioner Gene C. Smith on January 31, 1962, and on February 13, 1962. Plaintiff offered evidence bearing exclusively upon the circumstances and extent of his injuries. Ice Cream Company offered evidence bearing upon whether its liability, if any, to plaintiff was covered by Casualty Company's workmen's compensation Policy No. OCL 614 140. This policy states it is for the period "from May 9, 1960, to June 1, 1961." The evidence offered by Ice Cream Company, admitted over objection by Casualty Company, tended to show Casualty Company had agreed to issue such a policy for a period beginning April 20, 1960. Casualty Company did not offer evidence.

The hearing Commissioner, based upon his findings of fact and conclusions of law, held (1) that plaintiff had suffered a compensable injury on May 3, 1960, and (2) that Casualty Company was not on the risk on May 3, 1960. The hearing Commissioner entered an award that Ice Cream Company pay compensation and medical expenses in specified amounts. Ice Cream Company filed exceptions and appealed.

The full Commission adopted the findings of fact and conclusions of law of the hearing Commissioner and affirmed the award. Ice Cream Company filed exceptions and appealed to the superior court.

Judge Riddle, being of opinion the Commission's findings of fact are supported by competent evidence and that its conclusions of law are correct, entered judgment as follows:

"Therefore, it is ordered, adjudged, and decreed that the award of the North Carolina Industrial Commission allowing compensation to the plaintiff as against the defendant, employer, Gastonia Ice Cream Company, Inc., be and the same is hereby in all respects approved and confirmed, and the opinion and award of the North Carolina Industrial Commission denying compensation to the employee as against the de-

fendant, carrier, Lumbermens Mutual Casualty Company, is likewise, in all respect approved and confirmed."

Ice Cream Company excepted and appealed.

*Mullen, Holland & Cooke, O. A. Warren and Robert E. Gaines for plaintiff appellee.*

*Garland & Alala for defendant appellant Gastonia Ice Cream Company.*

*Hollowell & Stott for defendant appellee Lumbermens Mutual Casualty Company.*

BOBBITT, J. Plaintiff (an appellee) contends he sustained a compensable injury on May 3, 1960, for which he is entitled to a compensation award against Ice Cream Company. Plaintiff did not and does not assert any claim against Casualty Company.

Ice Cream Company (the appellant) contends: (1) Plaintiff did not sustain a compensable injury on May 3, 1960. (2) If he did, Casualty Company under its Policy No. OCL 614 140 is obligated to pay the compensation award.

Casualty Company (an appellee) contends its policy does not cover compensable injuries sustained prior to May 9, 1960, and that the Industrial Commission has no jurisdiction to reform the policy.

Finding of Fact No. 8, the only finding of fact bearing upon whether plaintiff sustained a compensable injury to which appellant excepted, states: "8. That the plaintiff suffered an injury by accident arising out of and in the course of his employment with the defendant employer on May 3, 1960." In assigning error, appellant asserts "(t)he evidence introduced was not sufficient to warrant Finding of Fact No. 8 . . ." Appellant also excepted to Conclusion of Law No. 1, essentially the same as Finding of Fact No. 8, and to Conclusion of Law No. 2. The subject of Conclusion of Law No. 2 is the extent of plaintiff's injury and the amount of compensation to which he is entitled.

Whether plaintiff sustained an injury by accident arising out of and in the course of his employment is a mixed question of law and of fact. *Sandy v. Stackhouse, Inc.,* 258 N.C. 194, 197, 128 S.E. 2d 218, and cases cited; *Horn v. Furniture Co.,* 245 N.C. 173, 176, 95 S.E. 2d 521, and cases cited.

The Commission's ultimate finding that plaintiff was injured by accident arising out of and in the course of his employment is based on specific findings covering crucial questions of fact on which plaintiff's right to compensation depends. There being no exception to any of the Commission's specific findings of fact, "we consider such specific findings of

fact, together with every reasonable inference that may be drawn therefrom, in plaintiff's favor in determining whether there is a factual basis for such ultimate finding." *Guest v. Iron & Metal Co.,* 241 N.C. 448, 451, 85 S.E. 2d 596; *Hardy v. Small,* 246 N.C. 581, 584, 99 S.E. 2d 862. When so considered, we are of opinion and decide that the Commission's specific findings of fact support its Finding of Fact No. 8 and its Conclusions of Law Nos. 1 and 2. Hence, appellant's said assignments of error are overruled.

As indicated, plaintiff did not and does not assert any claim against Casualty Company. Ice Cream Company (appellant), not plaintiff, caused Casualty Company to be brought into the proceeding. The matters discussed below relate to the rights and liabilities of appellant and Casualty Company *inter se.*

Finding of Fact No. 14, the only finding of fact bearing on this feature of the case to which appellant excepted, states: "14. That the defendant employer was not covered by a policy of workmen's compensation insurance on May 3, 1960, the date of the plaintiff's injury by accident." In assigning error, appellant asserts "(t)he evidence introduced was not sufficient to warrant Finding of Fact No. 14 . . ." Appellant also excepted to Conclusion of Law No. 4, essentially the same as Finding of Fact No. 14.

The Commission, citing G.S. 97-91 and *Greene v. Spivey,* 236 N.C. 435, 73 S.E. 2d 488, concluded it was its duty to determine the rights and liabilities of Ice Cream Company and Casualty Company *inter se.*

The policy, according to its express provisions, was for the period from May 9, 1960, to June 1, 1961. It appears the Commission based its ultimate finding that Casualty Company was not on the risk on May 3, 1960, on the ground appellant, notwithstanding its officers had full opportunity to discover the contents of the policy, accepted and retained the policy without protest, citing *Clements v. Insurance Co.,* 155 N.C. 57, 70 S.E. 1076, and *Coppersmith v. Insurance Co.,* 222 N.C. 14, 21 S.E. 2d 838. Appellant contends this basis of decision is untenable in that there is no evidence or specific finding of fact to the effect the policy was received by appellant prior to plaintiff's injury on May 3, 1960. Be that as it may, in view of our conclusion that the Commission had no jurisdiction to determine the rights and liabilities of appellant and Casualty Company *inter se,* the Commission's findings of fact and conclusions of law with reference thereto are without significance and are set aside.

Appellant offered evidence tending to show Casualty Company agreed to issue to it a workmen's compensation insurance policy for a period beginning April 20, 1960. Since the decision(s) below were in favor of the Casualty Company, no question is presented on this appeal as to

the competency of such evidence. Obviously, the Commission would have no jurisdiction of a cause of action by appellant against Casualty Company to recover damages on account of Casualty Company's failure to comply with such agreement. See 44 C.J.S., Insurance § 229; 29 Am. Jur., Insurance § 185.

Under the policy as written and issued, Casualty Company has no liability in connection with the compensable injury sustained by plaintiff on May 3, 1960. Hence, appellant cannot recover from Casualty Company *on the policy* unless and until the policy is reformed on the ground of mutual mistake (or otherwise) so as to provide for a policy period inclusive of May 3, 1960. *Peirson v. Insurance Co.*, 248 N.C. 215, 102 S.E. 2d 800, and cases cited. The question is whether the Commission had jurisdiction of what is essentially an action by appellant against Casualty Company to reform the policy and then recover the amount necessary to reimburse appellant as to all payments it is required to make to plaintiff under the award and judgment. The agreement asserted by appellant against Casualty Company is in the nature of an indemnity agreement and the controversy with reference thereto is not germane to the determination of plaintiff's claim against appellant. Compare *Greene v. Laboratories, Inc.*, 254 N.C. 680, 688, 120 S.E. 2d 82; *Steele v. Hauling Co.*, 260 N.C. 486, 489, 133 S.E. 2d 197.

"The Industrial Commission is not a court of general jurisdiction. It is an administrative board with quasi-judicial functions and has a special or limited jurisdiction created by statute and confined to its terms." *Letterlough v. Atkins*, 258 N.C. 166, 168, 128 S.E. 2d 215, and cases cited; *Biddix v. Rex Mills*, 237 N.C. 660, 662, 75 S.E. 2d 777; *Tindall v. Furniture Co.*, 216 N.C. 306, 312, 4 S.E. 2d 894. Whether the commission had jurisdiction of the subject matter, to wit, said controversy between appellant and Casualty Company, depends solely upon whether such jurisdiction was conferred by statute. *Hart v. Motors*, 244 N.C. 84, 92 S.E. 2d 673, and cases cited. "An absolute want of jurisdiction over the subject matter may be taken advantage of at any stage of the proceedings, even after judgment." *Pulley v. Pulley*, 255 N.C. 423, 429, 121 S.E. 2d 876, and cases cited. Casualty Company has contended throughout this proceeding that the Commission had no jurisdiction of said subject matter.

There is no contention that our Act expressly confers upon the Commission equitable jurisdiction to determine an asserted cause of action to reform a workmen's compensation insurance policy. The question is whether there is any statutory provision which, by necessary implication, confers such jurisdiction. In resolving this question, the nature of such cause of action and traditional requirements in respect of pleadings and burden of proof must be considered.

Well established principles relating to the *equitable* remedy of reformation include the following: "A proper case for the reformation of instruments must be made by the pleadings, and considerable strictness of pleadings as well as of proof is required." 76 C.J.S., Reformation of Instruments § 72; 45 Am. Jur., Reformation of Instruments § 98. "The power to reform an instrument is an extraordinary one whose exercise must be guarded with zealous care, and exercised with great caution. Thus, equity is slow and cautious in the exercise of this power, and will grant reformation only in a clear case of fraud or mistake." 76 C.J.S., Reformation of Instruments § 3; 45 Am. Jur., Reformation of Instruments § 5. To reform, *i.e.*, to *correct*, a written instrument on the ground of mutual mistake of the parties, the evidence must be clear, strong and convincing. *Johnson v. Johnson*, 172 N.C. 530, 90 S.E. 516. "Whether or not the evidence is clear, strong and convincing in a particular case is for the jury to determine." Stansbury, North Carolina Evidence, Second Edition, § 213, and cases cited.

Unless the notice of accident required by G.S. 97-22 and G.S. 97-23 is so considered, our Act (G.S. 97-1 *et seq.*) makes no mention of pleadings. No statutory provision suggests it would have been appropriate for appellant to have alleged a cause of action against Casualty Company for reformation of the policy on the ground of mutual mistake. Indeed, appellant did not attempt to plead or assert such cause of action. Appellant's motion of January 31, 1962, that Casualty Company be made a party to the proceedings, is based on its assertion that its liability, if any, on account of plaintiff's injury on May 3, 1960, was covered by the policy Casualty Company had issued.

"Whether administrative tribunals have equity jurisdiction to reform a policy of insurance to conform to the true intent of the parties depends on the wording of the Constitution and the Statute enacted in pursuance thereto creating the tribunal. Administrative tribunals are of limited jurisdiction. In some states constitutional and statutory provisions confer equity jurisdiction upon them which permits the reformation of a policy. In other states such reformation may be accomplished only through courts of equity, while in still other states the courts, without specific reference to either statutory or constitutional authority have held that the particular administrative tribunal has such equity power." Schneider, Workmen's Compensation Text, Permanent Edition, Volume 12, § 2500; 58 Am. Jur., Workmen's Compensation § 572; 100 C.J.S., Workmen's Compensation § 377; Annotation: 127 A.L.R. 473.

This summary is pertinent: "The general rule appears to be that, when it is ancillary to the determination of the employee's rights, the compensation commission has authority to pass upon a question relating to the

.insurance policy, including fraud in procurement, mistake of the parties, reformation of the policy, cancellation, and construction of extent of coverage. This is, of course, in harmony with the conception of compensation insurance as being something more than an independent contractual matter between insurer and insured. On the other hand, when the rights of the employee in a pending claim are not at stake, many commissions disavow jurisdiction and send the parties to the courts for relief. This may occur when the question is purely one between two insurers, one of whom alleges that he has been made to pay an undue share of an award to a claimant, the award itself not being under attack. Or it may occur when the insured and insurer have some dispute entirely between themselves about the validity or coverage of the policy or the sharing of the admitted liability." Larson, Workmen's Compensation Law, Volume 2, § 92.40.

In our opinion, and we so decide, our Act does not confer upon the Commission expressly or by implication jurisdiction to determine, in a proceeding in which plaintiff asserts no claim against Casualty Company, appellant's asserted right to reform the policy and to recover from Casualty Company the amount of plaintiff's award. It was not contemplated that payment of compensation to an injured employee should be delayed by or involved in a determination of such a controversy.

It is unnecessary to determine to what extent, if any, our Act confers equitable jurisdiction upon the Commission. It seems appropriate that such determination(s) be made when specific factual situations are under consideration. It is noted: Under Article IV (Section 3) of the Constitution of North Carolina as amended in 1962 the General Assembly may vest in administrative agencies "such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes for which the agencies were created."

Unquestionably, the Commission has jurisdiction to set aside on the ground of mutual mistake an agreement and an award theretofore entered in a proceeding for compensation. *Neal v. Clary,* 259 N.C. 163, 130 S.E. 2d 39. Here, the Commission's records disclose appellant's prior policy expired April 20, 1960, and that appellant's compensation liability was not insured between April 20, 1960, and May 9, 1960.

Appellant contends equitable jurisdiction to determine the cause of action it asserts against Casualty Company is conferred by G.S. 97-91, which provides: "All questions *arising under this article* if not settled by agreements of the parties interested therein, with the approval of the Commission, shall be determined by the Commission, except as otherwise herein provided." (Our italics). Questions "arising under this article" would seem to consist primarily, if not exclusively, of questions

for decision in the determination of rights asserted by or on behalf of an injured employee or his dependents.

Appellant quotes and stresses this excerpt from the opinion in *Greene v. Spivey, supra, viz.*: "The Commission is specifically vested by statute with jurisdiction to hear 'all questions arising under' the Compensation Act. G.S. 97-91. This jurisdiction under the statute ordinarily includes the right and duty to hear and determine questions of fact and law respecting the existence of insurance coverage and liability of the insurance carrier." While the quoted statement, considered apart from the factual situation under consideration, would seem to support appellant's contention with reference to the jurisdiction of the Commission, we are mindful of this apt expression of Barnhill, J. (later C. J.) : "The law discussed in any opinion is set within the framework of the facts of that particular case . . ." *Light Co. v. Moss,* 220 N.C. 200, 17 S.E. 2d 10.

Reference is made to the preliminary statement and opinion in *Greene v. Spivey, supra,* for a full explanation of the factual situation. Greene, an employee of Spivey, sustained a compensable injury on July 19, 1949, and as a result thereof died on July 26, 1949. The Commission's award in favor of Greene's dependents was against Spivey, Greene's employer, *and* against American Mutual Liability Insurance Company (American Mutual) as *Spivey's* compensation insurance carrier.

Spivey was engaged in the business of "timbering and logging." He purchased and worked standing timber and sold logs in the open market. However, on January 14, 1949, and for some time prior thereto, he had been selling his entire output to Halsey Hardwood Company, Inc. (Halsey Hardwood). He continued to do so until March, 1949. On January 14, 1949, American Mutual issued its compensation insurance policy to Halsey Hardwood on a "quarterly audit basis." Spivey, Halsey Hardwood and American Mutual negotiated with reference to providing compensation coverage for Spivey. It was agreed that Spivey would be covered by the Halsey Hardwood policy upon payment of premiums based on 5.5% of his payroll, to be reported and paid weekly by Spivey to Halsey Hardwood and thereafter transmitted by Halsey Hardwood to American Mutual. Beginning the first week in February, 1949, and thereafter, Spivey reported and paid weekly to Halsey Hardwood. The Commission found as a fact that "premiums were paid by O. R. Spivey to Halsey Hardwood in accordance with the arrangement detailed until after the death of Henry Greene." American Mutual conceded the policy provided coverage for Spivey from "on or about 1 February, 1949." The opinion states: "However, American Mutual takes the position that *its contract with Spivey* furnished coverage of his workers only while and so long as he was selling and delivering logs to Halsey Hardwood." (Our

italics). American Mutual's primary contention was that Spivey was not covered on July 19, 1949, when Greene was fatally injured, because Spivey then was not engaged in selling and delivering logs to Halsey Hardwood but was engaged in selling and delivering logs to another purchaser.

In *Greene v. Spivey, supra,* the policy was in full force and effect on July 19, 1949. Subsequent to the issuance of the policy, the agreement was reached that, for the consideration stated, it would provide coverage for Spivey. No question was presented as to the necessity for reformation of the policy or of the Commission's jurisdiction to reform the policy. Whether the Commission had jurisdiction seems to have been raised and treated as an incidental question. Indeed, in view of American Mutual's admission that the policy provided coverage to Spivey "for a time," it does not appear that a serious question as to jurisdiction was presented. Be that as it may, the conclusion reached is that *Greene v. Spivey, supra,* may not be considered authority for the proposition that the Commission has equitable jurisdiction to determine whether a compensation insurance policy should be reformed. *A fortiori,* this is true when as here the controversy is solely between the employer and the insurance company.

The portion of the judgment of the court below which affirms the award of the Commission "allowing compensation to the plaintiff as against the defendant, employer, Gastonia Ice Cream Company, Inc.," is affirmed.

The portion of said judgment providing, "and the opinion and award of the North Carolina Industrial Commission denying compensation to the employee as against the defendant, carrier, Lumbermens Mutual Casualty Company, is likewise, in all respect approved and confirmed," is stricken therefrom for two reasons, to wit: (1) The Commission's award contains no reference to the Casualty Company. (2) The Commission had *no jurisdiction* to determine the controversy between appellant and Casualty Company. Too, as stated above, all of the Commission's findings of fact and conclusions of law relating to the controversy between appellant and Casualty Company are set aside. Hence, in further litigation, if any, between appellant and Casualty Company neither party will be prejudiced on account of any finding of fact or conclusion of law made herein.

As modified as provided in this opinion, the judgment of the court below is affirmed.

Modified and affirmed.